MAGNETIC ENGINEERING & MANUFAC-
TURING CO. v. DINGS MFG. CO.

No. 86, Docket 21454.

United States Court of Appeals
Second Circuit.

Argued Dec. 8, 1949.

Decided Jan. 4, 1950.

Asbury S. Edmonds and Robert E. Burns, New York City, for the appellant.

Page S. Haselton and Ward, Crosby & Neal, New York City, for the appellee.

Before L. HAND, Chief Judge, and SWAN and FRANK, Circuit Judges.

L. HAND, Chief Judge.

 The plaintiff has appealed from an order entered in the above action which (1) denied a motion for a preliminary injunction, forbidding the defendant to threaten its customers with infringement of four named patents; (2) directing the plaintiff to amend its complaint by stating separately two claims which it had pleaded as one, and to state more definitely certain allegations in each claim; and (3) transferring the action to the Eastern District of Wisconsin as the more convenient forum.[1] The nature of the action and the facts, alleged in the pleadings and in the affidavits, are stated in Judge Hulbert's opinion reported in D.C., 86 F.Supp. 13, with which we shall assume familiarity in what we have to say; but at the outset a question arises whether we have any longer any appellate jurisdiction whatever over the order. Judge Hulbert certainly intended to decide the motion for a preliminary injunction and to compel the filing of a new complaint, while the action remained before him, and to transfer it only after he had done so. Indeed, it would have been absurd to decide anything in an action which had already been transferred

[1]. § 1404 (a), Title 28 U.S.C.A.

elsewhere; and the clerk of the District Court for the Southern District of New York, following the judge's direction, did not at once transmit the papers on file in his office to the Eastern District of Wisconsin; or indeed, until after the plaintiff had appealed. The order did not affect automatically to transfer the cause; the transmittal of the papers was to be the symbolic act of transfer; and the case was still in the district court, when the appeal was taken. Since the appeal removed it, nothing taking place later in the district court could affect the jurisdiction once acquired. However, the order, requiring the plaintiff to separate the claims and to make the complaint more definite, was in any event plainly interlocutory, and not appealable on any theory. We shall therefore confine our discussion to the other two provisions of the order.

█ In so far as it denied the temporary injunction, it was of course appealable, and it is before us on the merits. In support of its motion as to two of the four patents in controversy—Nos. 2,003,430 and 2,090,112—the plaintiff submitted an affidavit of one, Hope, that he had been chief engineer of the defendant in 1932, "during the prosecution of the application" of the first of these patents; and that the defendant's attorney, who was "soliciting" it, told him that he thought it might be possible "to get some sort of patent, but that it would not be any good." The affidavit went on to say that the attorney had also said that he had told the defendant's president "to drop the application," and that the president had answered that ordinarily he would so do, but that if any sort of patent at all could be obtained he thought it would be valuable to them from a "business trading viewpoint." As to the second patent, the plaintiff produced a letter of the defendant's president to the same attorney—while the application for that patent was in the Patent Office—part of which declared: "Frankly, we are going through with this for political purposes. The refinements brought out have some merit, of course, but to my way of thinking they hardly warrant the expense of taking out a patent on them."

█ The plaintiff served this affidavit on the defendant on April 13, 1949, and the motion did not come on for hearing until May 24. On April 18 the defendant made a motion in four parts, which it supplemented on May 13, and again on May 24, on which day it also filed its answer. Nowhere in any of the affidavits filed did its president, or anyone else, deny or qualify the statements we have quoted; and for the purpose of a temporary injunction we must take them as true. So taken, they justify a provisional conclusion that the defendant did not act in good faith, when it several times asserted to customers of the plaintiff that the two patents are valid, and intimated that it would sue for their infringement. It must be enjoined from continuing to do so, until their validity can be determined at the trial. Nothing of the kind affects the other two patents in suit—Nos. 2,410,601 and 2,446,812. So far as appears, these enjoy the presumptive validity of any duly issued patents, and the defendant is within its rights in asserting them against anyone whom it in good faith believes to be infringing them. The plaintiff must submit to any loss it may sustain, as must anyone who is sued in good faith upon a patent not yet adjudicated; the only relief is an action for a declaratory judgment, such as this. The order denying the motion to enjoin the defendant from threatening the plaintiff's customers with suits upon Patents Nos. 2,003,430 and 2,090,112 will be reversed and an injunction will go as prayed; otherwise it will be affirmed.

█ There remains the question of the transfer. Before the enactment of § 1404(a) of the Judicial Code all that courts could do in cases of forum non conveniens was to dismiss the complaint, and leave the plaintiff to a new action in the proper district; those were final orders and appealable. However, when an action is transferred, it remains what it was; all further proceedings in it are merely referred to another tribunal, leaving untouched whatever has been already done. For this reason the Fourth Circuit in Jiffy Lubricator Company, Inc. v. Stewart-

Warner Corporation,[2] dismissed an appeal from such an order. We agree; and the appeal from that part of the order will be dismissed.

In this circuit we have twice refused to accept an appeal as a substitute for a petition for mandamus, even when that remedy was applicable;[3] and we shall abide by that ruling. That would require the plaintiff to proceed by mandamus, as was done later in Mottolese v. Preston, 2 Cir., 176 F.2d 301. However, that course would not be effective here, for, if we dismiss the appeal and remand the case to the district court, it will be too late to grant a mandamus, for the cause has been already transferred. Nevertheless, if we should have had jurisdiction to issue the writ, had the plaintiff applied for it at the time when it appealed, we think that we ought to grant it now, ignoring what is at best only a matter of form; and for that reason we hold that we are free to treat the appeal as a petition for mandamus. The question then becomes whether the circumstances at bar call for its issue. If we could protect our appellate jurisdiction only in that way, there would be no doubt; indeed the practice before 1875 would then control, under which, if a circuit court erroneously remanded a removed case to a state court, the Supreme Court would review the remand by mandamus.[4] In 1875 the right of appeal or writ of error was expressly given in such cases[5] so that mandamus became unnecessary; and, when the Act of 1875 was amended in 1887, it abolished appeal and writ of error,[6] and the Court held that the old practice did not revive, because the intent was apparent to abolish any kind of review—especially because· of the words, "such remand shall be immediately carried into execution."[7] The precedent nevertheless is still good; and, if there were no difference between a remand from a federal to a state court and a transfer to another federal court, the writ ought to go in the case at bar. However, there is a decisive difference, for a remand to a state court puts an end to any federal jurisdiction whatever, and does not merely substitute one federal court for another. We do not believe that our power to protect our own jurisdiction extends to protecting it as against the jurisdiction of another federal court of equal jurisdiction, or that a suitor has any legally protected interest in having his action tried in any particular federal court, except in so far as the transfer may handicap his presentation of the case, or add to the costs of trial.

These being the only interests in the transfer which we recognize, the decision must turn upon whether the plaintiff may suffer so much prejudice in respect of either as to justify intervention by means of this very exceptional writ.[8] That will certainly in large measure depend upon whether any other remedy is available to it; and it is certainly true that upon an appeal from a final judgment against it, it will be extremely difficult for the plaintiff to show that it lost the case because of the handicap of the transfer. As for the added cost of trying the case in the new forum, it is hard to see how in any event it could be recoverable from the defendant, for the error would be that of the court. There are therefore at least plausible grounds why we should issue the writ. On the other hand, whatever power of review we may have, the Court of Appeals for the Seventh Circuit has the same; and that court will be in a much better position than we to pass upon at least the first of the two questions involved; i. e., the extent to which any review of the transfer will be open upon appeal from a final judgment against the plaintiff. It is true that the same considerations would determine

2. 177 F.2d 360.

3. Abbe v. New York, New Haven & Hartford Ry. Co., 2 Cir., 171 F.2d 387; Mottolese v. Preston, 2 Cir., 172 F.2d 301, 308.

4. Chicago & A. Railroad Company v. Wiswall, 23 Wall. 507, 23 L.Ed. 103.

5. 18 St. at L. 470, 472.

6. 24 St. at L. 552, 553.

7. Ex parte Pennsylvania Company, 137 U.S. 451, 11 S.Ct. 141, 142, 34 L.Ed. 738.

8. Ex parte Fahey, 332 U.S. 258, 67 S.Ct. 1558, 91 L.Ed. 2041.

the answer, whether we, or the Seventh Circuit, decide it; but it does not follow that the decision would be the same in each court; and, since the absence of any relief upon appeal from final judgment is so critical in the decision, surely it is appropriate for that court to decide it, which will decide the appeal itself. We will not say that the answer might not be so plain that we ought not to hesitate, or that it would be impossible for mandamus to go, even though the transfer would be reviewed on final appeal. It is enough that that may prove the crucial question, and that a decision of it by the Seventh Circuit is obviously to be preferred to ours. Since the plaintiff may apply to that court without substantial cost or hardship, we decline to grant.

Finally, if it be suggested that the Seventh Circuit would have no jurisdiction to direct Judge Hulbert to resume jurisdiction, we answer that that will not be necessary. The cause is in the Wisconsin court to which it has been transferred, for, however erroneous the transfer, Judge Hulbert had undoubted jurisdiction to make the order and it has been executed. The review of any order of the district court in a transferred cause, made before transfer, is within the jurisdiction of the court of appeals of the circuit to which the cause has been transferred; and if the Seventh Circuit decides that the transfer was erroneous, it has jurisdiction to direct the Wisconsin court to transfer the action back to the Southern District of New York, just as it was transferred out of that district.

The order, so far as it denied the motion for a temporary injunction, will be modified as indicated above.

The appeal from so much of the order as directed the plaintiff to file an amended complaint, and from as much as transferred the action, will be dismissed.

FRANK, Circuit Judge (dissenting in part).

I incline to believe that my colleagues and the Fourth Circuit are probably correct in holding that the plaintiff cannot now seek relief from the transfer order by an appeal at this stage of the case, since the statute governing appeals bars appeals from interlocutory orders, and since the removal order is probably interlocutory. However, Congress, when it recently substituted a transfer order for an order of dismissal previously used (under the forum non conveniens doctrine) in cases like this, almost surely did not plan such a result, i. e., I think that Congress did not have in mind that the transfer order would be interlocutory and non-appealable. I think, therefore, that a sense of justice should prompt us to grant relief, if possible, by way of mandamus.[1] For if, on the facts here, the transfer order was improper, plaintiff may be seriously hurt, should he be obliged to wait, for a vacation or reversal of that order, until the completion of a trial in Wisconsin. Indeed, paradoxically, if he must thus wait, and then wins at the end of the trial, the hurt to him, caused by the transfer, will be wholly irremediable.

My colleagues, conceding the hardship to plaintiff if the mandamus road is closed, say that that road will be open to plaintiff, after the transfer of the case, in the Seventh Circuit which, my colleagues say, will have the power to direct a re-transfer of this case, before trial, to the court below. But such a procedure involves, necessarily, considerable expense for the plaintiff. He has already had printed and filed in this court a transcript of the record consisting of 134 printed pages, and a brief 23 pages in length. Under my colleagues' decision, he must now reprint, at least in part, the transcript and his brief, and must also pay his lawyer the expense of a trip

---

1. Judge Learned Hand and I have urged that, in an appropriate case, an appeal should be treated as a petition for a mandamus. But our colleagues have disagreed with us. I therefore concur in Judge Hand's conclusion that, except in unusual situations such as that here, our recent precedents constrain us to adhere to formalism, as to pleadings, of a kind which we decry when employed by the district courts. But see Georgia Hardwood Lumber Co. v. Compania, De Navegacion Transmar, S. A., 323 U.S. 334, 335, 65 S.Ct. 293, 89 L.Ed. 280; dissenting opinion in U. S. ex rel. Sutton v. Mulcahy, 2 Cir., 169 F.2d 94, 97, at page 102.

to Chicago and (presumably) another fee for the oral argument in the Seventh Circuit. The expense, delay and bother we could now save him were we promptly to decide whether to issue a writ of mandamus.

My colleagues seem to answer thus: (1) The statute empowers us to issue such a writ only "in aid of" our appellate "jurisdiction." [2] (2) The word "jurisdiction" in this context means not (a) the jurisdiction of this federal circuit court but (b) solely federal court jurisdiction as distinguished from state court jurisdiction. It is with point (2) of this reasoning that I disagree.

I grant that a court's sense of justice [3] should not induce it to ignore limitations on its power imposed by statute [4] or by precedents so well established that it would be improper to alter them judicially.[5] But I see no such barriers here. I find nothing in the legislative history or wording of the statute as to writs of mandamus, nor in any decisions construing that statute, which compels the undesirable conclusion at which my colleagues have apparently arrived.

There is one sentence in my colleagues' opinion which perhaps intimates that, were the impropriety of the transfer order sufficiently glaring, we could issue the writ, but that, absent such glaring facts, it is much to be preferred that the Seventh Circuit consider whether a writ should issue. Even if this restricted interpretation of my colleagues' opinion is correct, I disagree. For I perceive no reason why the Seventh Circuit can better decide the issue than can we. After all, the removal order was made by a district court within this Circuit. And, if the Seventh Circuit does issue a writ, the situation will become involved: That Circuit Court will direct the district court in Wisconsin to re-transfer the case to the court below. But the court below will not be subject to a re-transfer order entered by the Seventh Circuit, and might, refusing to comply with that order, again transfer the case to Wisconsin. Perhaps, in those circumstances, we would intervene, and, probably, feeling obliged to follow the Seventh Circuit's determination, would, by mandamus, then direct the court below to hear the case. Such is the complicated procedure which my colleagues' decision opens up as a possibility. I fail to understand why we should require such an involved procedure instead of ourselves determining at once whether the order of the lower court was within its discretion. We can do so now, for all the facts bearing on the propriety of that order are in the record now before us.

2. 28 U.S.C.A. § 1651(a), formerly 28 U.S. C.A. § 377.

3. Cf. Cahn, The Sense of Injustice (1949) 37–38.

Some lawyers seem to consider it scandalous that a court should ever state that it is prompted by a sense of justice to reach a result, even within the allowable limits. Cf. Eckler, 17 Un. of Chicago L.Rev. (1949) 56, 62; Sheppard, The Decadence of the System of Precedents, 24 Harv.L.Rev. (1911) 298, 302. But I think that Holmes, J., took a contrary position in his many comments on the public policy considerations that ought to sway courts. Note also that the conservative Chancellor Kent said, in a letter, that, when deciding a case, he first made himself "master of the facts." Then, he continued, "I saw where justice lay, and the moral sense decided the court half the time; I then sat down to search the authorities * * * I might once in a while be embarrassed by

a technical rule, but I almost always found principles suited to my view of the case. * * *"

4. See N. L. R. B. v. National Maritime Union, 2 Cir., 175 F.2d 686, 690 and note 7.

5. See Holmes, J., in Southern Pacific Co. v. Jensen, 244 U.S. 205, 218, 221, 37 S.Ct. 524, 531, 61 L.Ed. 1086, L.R.A. 1918C, 451, Ann.Cas.1917E 900: "A common-law judge could not say, 'I think the doctrine of consideration a bit of historical nonsense and shall not enforce it in my court.'" See also Slifka v. Johnson, 2 Cir., 161 F.2d 467, 469 at page 470; Hoffman v. Palmer, 2 Cir., 129 F.2d 976, 987; dissenting opinion in Commissioner of Internal Revenue v. Hall's Estate, 2 Cir., 153 F.2d 172 at page 175; concurring opinion in Aero Spark Plug Co. v. B. G. Corp., 2 Cir., 130 F.2d 290 at pages 297–298; Frank, Courts On Trial (1949) Chapter 19 (especially pp. 270, 285–286).