**Diane McGEORGE, Plaintiff–Appellant,**

**v.**

**CONTINENTAL AIRLINES, INC., Defendant–Appellee.**

**No. 87–1968.**

United States Court of Appeals, Tenth Circuit.

April 3, 1989.

Allan DeVore of The DeVore Law Firm (Peggy Pinder, Grinnell, Iowa, with him on

the briefs), Oklahoma City, Okl., for plaintiff-appellant.

Richard M. Sharp of Shea & Gardner (Elizabeth Runyan Geise of Shea & Gardner, Washington, D.C., and Burton J. Johnson and Rocklin D. Lyons of Looney, Nichols, Johnson & Hayes, Oklahoma City, Okl., with him on the brief), Washington, D.C., for defendant-appellee.

Before MOORE, TACHA, and BALDOCK, Circuit Judges.

JOHN P. MOORE, Circuit Judge.

This is an appeal seeking review of orders of two separate district courts. The first order was issued by the United States District Court for the District of Columbia. That order dismissed plaintiff's claim that defendant Continental Airlines violated portions of the Rehabilitation Act and the Federal Aviation Act by requiring her and her guide dog to sit in a seat other than that originally assigned to her. At the same time, the court also dismissed three of plaintiff's four pendent state claims. After entry of the dispositional orders, the District of Columbia court transferred venue of the case to the Western District of Oklahoma. Following briefing and a hearing, the transferee court dismissed the remaining claim. Plaintiff seeks review of both orders. We conclude we are without jurisdiction over the appeal from the orders of the District of Columbia court, and that portion of the appeal is dismissed. We further conclude the Oklahoma court properly dismissed plaintiff's common law battery claim and denied plaintiff's motion to amend her complaint. That judgment is affirmed.

Plaintiff, Diane McGeorge, is blind and travels with a guide dog. When she attempted to take the coach section seat assigned to her on a Continental flight from Oklahoma City to Houston, Ms. McGeorge was told by a flight attendant that she and her dog would have to move to a bulkhead seat in the first class section. Ms. McGeorge protested but was advised that FAA safety regulations required that she sit in a bulkhead seat.

Ms. McGeorge refused to move because, she claimed, she and her dog would be more comfortable in her center coach seat. Moreover, she believed there was no FAA regulation which required her to sit in a bulkhead seat.[1] When, after a delay of almost thirty minutes, the pilot and other Continental employees were unable to persuade Ms. McGeorge to either move to the first class seat or leave the aircraft, local police were summoned.

In the presence of the police, Ms. McGeorge agreed to leave the airplane if she were given a copy of the regulation referred to by the flight crew. On her way out, Ms. McGeorge stopped at the doorway, expecting to receive the promised document. When she hesitated, a police officer who was following plaintiff lifted her over the plane's threshold and onto the jetway. Ms. McGeorge claimed that, in doing so, the officer touched her in an offensive manner, giving rise to the battery claim.[2]

▮ The first question we must address is whether we have jurisdiction to review the orders of the District of Columbia court. Neither party has raised this issue; nonetheless, we have a duty to inquire into our own jurisdiction. *See Juidice v. Vail*, 430 U.S. 327, 331, 97 S.Ct. 1211, 1215, 51 L.Ed.2d 376 (1977); *Brown Shoe Co. v. United States*, 370 U.S. 294, 305, 82 S.Ct. 1502, 1512, 8 L.Ed.2d 510 (1962); *Tuck v.*

---

**1.** Ms. McGeorge was correct, as the FAA merely *recommended* bulkhead seating for blind passengers with guide dogs. FAA Advisory Circular 120–32 (March 25, 1977), at ¶ 6.a.

**2.** Ms. McGeorge admitted in her deposition that she was not physically hurt by this act, but rather she stated the officer "placed one hand on either side of my breasts which I found totally unacceptable." When asked how else he could have picked up Ms. McGeorge, the officer responded: "At the risk of inflicting a bruise on either arm, the only other option I would have had would have been to have grabbed her from the outer sides of her arms and would have had to power lift her." He added that action would have "created greater risk" to her because of the pressure he would have had to apply to her body.

*United Servs. Auto. Ass'n,* 859 F.2d 842, 844 (10th Cir.1988).

■ The pertinent statute from which our jurisdiction devolves, 28 U.S.C. § 1294(1), states: "appeals from *reviewable decisions* of the district ... courts shall be taken ... [f]rom a district court of the United States to the court of appeals *for the circuit embracing the district.*" (Emphasis added.) Because the District of Columbia is not within the territory of this circuit, the unequivocal language of this statute leaves no room for doubt that we do not have jurisdiction over the D.C. appeal. *Roofing & Sheet Metal Servs. v. La Quinta Motor Inns,* 689 F.2d 982, 986 (11th Cir.1982); *In re Corrugated Container Anti-trust Litig.,* 620 F.2d 1086, 1090–91 (5th Cir.1980), *cert. denied,* 449 U.S. 1102, 101 S.Ct. 897, 66 L.Ed.2d 827 (1981); *see also C.P.C. Partnership and Bardot Plastics, Inc. v. Nosco Plastics, Inc.,* 719 F.2d 400, 401 (Fed.Cir.1983); *Linnell v. Sloan,* 636 F.2d 65, 67 (4th Cir. 1980); *General Elec. Co. v. Byrne,* 611 F.2d 670, 672 (7th Cir.1979); *MacNeil Bros. v. Cohen,* 264 F.2d 186, 187 (1st Cir.1959).

When presented at oral argument with the limitation of our jurisdiction, counsel for Ms. McGeorge deftly suggested that because the D.C. District Court did not direct entry of final judgment on the claims with which it dealt, Fed.R.Civ.P. 54(b), the D.C. District Court order was not appealable until after the Oklahoma court entered its order. Thus, counsel urged, we acquired jurisdiction to hear the D.C. appeal because all issues merged into the order of the Oklahoma court and became final.

This argument is unpersuasive. As observed by the court in *Roofing & Sheet Metal Servs.,* 689 F.2d at 986, n. 5, the statute which circumscribes the territorial jurisdiction of the courts of appeals applies to all "reviewable" decisions of the district courts, not just to those which are immediately appealable.[3] The jurisdictional problem here is created by the circumscription of a *territorial* jurisdiction for each court of appeals. When Congress defined the outer limits beyond which an appellate court cannot reach, it meant to limit the power of review as well as the authority to supervise to those district courts within the circumscribed circuit.[4] When that limitation is understood, it is apparent that territorial limits to jurisdiction are not dependent upon the finality of the decision from which an appellant seeks review.

The jurisdictional hiatus in this case could have been avoided had the D.C. District court entered a Rule 54(b) partial judgment on the claims it dismissed.[5] If a partial judgment had been entered, the Court of Appeals for the District of Columbia Circuit would have had jurisdiction over the decisions we now cannot consider. *Magnetic Eng'g & Mfg. Co. v. Dings Mfg. Co.,* 178 F.2d 866, 868 (2d Cir.1950) (The orders of a district court made before transfer are reviewable by the circuit court in the transferor court's circuit.). The absence of such a judgment, however, does not, by default, create jurisdiction in this court. We have no choice but to dismiss that portion of this appeal which seeks review of the order of the District Court of the District of Columbia.

■ Plaintiff has raised two issues regarding the order of the District Court of the Western District of Oklahoma with which we can deal. First, she argues the court improperly dismissed her common law battery claim. In its written order and judgment, the trial court held:

The alleged battery rested on an allegedly offensive touching done by the Okla-

---

3. Compare 28 U.S.C. § 1291.

4. The Fifth Circuit seems to have made an exception for cases transferred into a district by the multidistrict litigation panel. *See Astarte Shipping Co. v. Allied Steele & Export Serv.,* 767 F.2d 86, 87 (5th Cir.1985) ("[A] transfer under [28 U.S.C. § 1407] transfers the action lock, stock, and barrel.") That case seems to stand alone, however.

5. Plaintiff did not seek reconsideration of the order granting summary judgment and transferring the case to Oklahoma, nor did she request entry of a partial judgment. Apparently, neither she nor the defendant gave any consideration to the jurisdictional problem until we raised it at oral argument.

homa City airport police who were not agents of the defendant, Continental Airlines. For an agency relationship to exist, the principal must be able to exercise control over that agent, and in regard to a police officer acting in his official capacity, as was the situation in this case, such control did not exist.

Ms. McGeorge argues this ruling was incorrect because the issue of the agency relationship "is a set of sharply disputed facts which should have been presented to a jury for determination as between the parties." Further, she contends, the defendant can be held accountable, as a matter of law, for the acts of the Oklahoma City police officer.[6] Plaintiff takes her support for this argument from *Chicago, Rock Island & Pac. Ry. v. Radford*, 36 Okl. 657, 129 P. 834 (1913). Plaintiff's reliance upon *Radford* is misplaced.

The only similarity between *Radford* and the present case is that Mr. Radford was placed in police custody while on one of the defendant's trains. Mr. Radford did not claim, as does Ms. McGeorge, that the *officer* who arrested him was an agent of the defendant. Mr. Radford claimed that the railroad's employee who *caused* Mr. Radford's arrest was the agent of the railroad, and that the railroad was responsible for the conduct of its *employee*. *Id.* While *Radford* stands for the now commonplace proposition that a corporation can be held liable for the tortious acts of its employees, that issue is not presented in this case.

The trial court here held that Ms. McGeorge could not establish that the person who committed the act giving rise to her battery claim was an agent of the defendant. In effect, the court ruled that plaintiff could not show defendant had control over the officer, and without control the officer could not have been Continental's agent. *Haworth v. Central Nat'l Bank of Oklahoma City*, 769 P.2d 740 (Okla.1989). In her argument to this court, Ms. McGeorge has *assumed* the officer was defendant's agent, but she has cited no

legal authority which makes that assumption valid.[7] We conclude, therefore, the trial court correctly dismissed the battery claim. *Hingson v. Pacific Southwest Airlines*, 743 F.2d 1408, 1416 (9th Cir.1984).

Finally, plaintiff argues the trial court improperly denied her motion to amend her complaint to add a claim of defamation. The record indicates that on the morning of the argument on defendant's motion, plaintiff attempted to raise the claim in a letter delivered to counsel and the court. Plaintiff's counsel had not moved to amend the complaint to raise that claim, and in oral argument to the court, took the position that the claim was inherent in the pleadings. Notwithstanding that position, counsel orally moved to amend the complaint after the court granted defendant's motion to dismiss. The trial court held that the motion to amend, coming some four years after commencement of the case, was too late, and the court denied the motion. Plaintiff now contends that ruling was erroneous.

■ First, plaintiff contends that the motion to amend was unnecessary because the defamation theory was always implicit in the case. We regard that argument as disingenuous. At oral argument in the trial court, counsel admitted the attorney who drafted the complaint had not thought about a defamation claim, and had not intended to include such a claim in the complaint. Moreover, counsel conceded that he, too, had not thought about a defamation claim until just prior to the hearing on defendant's motion. These admissions make clear the claim is really an afterthought which did not arise until four years after the complaint had been filed. Plaintiff's argument to the contrary rings hollow.

More importantly, in the context of a defamation claim, Fed.R.Civ.P. 8(a) requires that the complaint provide sufficient notice of the communications complained of to allow Continental to defend itself. *Lig-*

---

6. The officer was never joined as a defendant in this case.

7. Plaintiff argues that agency can be implied in this case absent control. The cases cited by plaintiff do not support her theory.

*uori v. Alexander,* 495 F.Supp. 641, 647 (S.D.N.Y.1980); Okla.Stat.Ann. tit. 12, § 1444.1 (1987). If plaintiff's own counsel did not perceive the possibility of a defamation claim until four years after the filing of the complaint, it is impossible for defendant to have gleaned from the complaint adequate notice of this theory of liability.

■ Plaintiff next argues Fed.R.Civ.P. 15 requires that motions to amend be "freely and liberally granted," hence, the trial court abused its discretion by denying the motion. We review orders denying motions to amend under an abuse of discretion standard. *A.E. v. Mitchell,* 724 F.2d 864, 868–69 (10th Cir.1983). Because the action had been pending for over four years, through two sets of plaintiff's counsel and through lengthy discovery and legal maneuvering, we can find no abuse of discretion. *Anderson v. USAir, Inc.,* 818 F.2d 49, 57 (D.C.Cir.1987). Because of our disposition of this case, we see no need to consider the other issues raised.

DISMISSED in part and AFFIRMED in part.