PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

TECHNOSTEEL, LLC, formerly known
as Alco Lite Industries, LLC,
*Plaintiff-Appellant,*

v.

BEERS CONSTRUCTION COMPANY,
*Defendant-Appellee.*

No. 00-1658

Appeal from the United States District Court
for the District of South Carolina, at Columbia.
Dennis W. Shedd, District Judge.
(CA-99-3924-3-19)

Argued: April 3, 2001

Decided: October 10, 2001

Before TRAXLER and GREGORY, Circuit Judges, and
Lacy H. THORNBURG, United States District Judge for the
Western District of North Carolina, sitting by designation.

_____

Affirmed by published opinion. Judge Traxler wrote the opinion, in
which Judge Gregory and Judge Thornburg joined.

_____

## COUNSEL

**ARGUED:** Daniel Tompkins Brailsford, ROBINSON, MCFADDEN
& MOORE, P.C., Columbia, South Carolina, for Appellant. David
Ryan Hodnett, ALSTON & BIRD, L.L.P., Atlanta, Georgia, for
Appellee. **ON BRIEF:** Charles H. McDonald, ROBINSON,

MCFADDEN & MOORE, P.C., Columbia, South Carolina, for Appellant. C. Allen Gibson, Jr., BUIST, MOORE, SMYTHE & MCGEE, P.A., Charleston, South Carolina, for Appellee.

---

**OPINION**

TRAXLER, Circuit Judge:

This case arises out of an alleged breach of contract between TechnoSteel, LLC ("TechnoSteel") and Beers Construction Company ("Beers"). TechnoSteel appeals the district court's order denying its petition to compel arbitration of its dispute with Beers pursuant to 9 U.S.C.A. § 4 (West 1999). Beers filed a motion to dismiss TechnoSteel's appeal for lack of jurisdiction based upon the district court's simultaneous decision granting Beer's motion to transfer the case pursuant to 28 U.S.C.A. § 1404(a) (West 1993) to the Northern District of Georgia for litigation.

We hold that the physical transfer of the litigation aspects of this case to the Northern District of Georgia does not divest this court of jurisdiction to review the district court's immediately appealable decision to deny TechnoSteel's petition to compel arbitration. Therefore, we have jurisdiction to hear TechnoSteel's appeal from that portion of the district court's order and we deny Beer's motion to dismiss this appeal for lack of jurisdiction. We affirm, however, the district court's decision denying TechnoSteel's petition to compel arbitration under § 4 of the Arbitration Act.

I.

Health Management Associates d/b/a Hartsville HMA (the "Owner" or "Hospital") awarded Beers the general contract to construct a hospital in Hartsville, South Carolina. Beers, in turn, subcontracted the project's structural steel fabrication and erection to TechnoSteel. When a dispute arose concerning TechnoSteel's performance on the project and its entitlement to full payment, the parties disagreed as to whether the dispute was subject to arbitration or litigation and as to whether the proper forum was in Georgia or South Car-

olina. TechnoSteel filed a demand for arbitration against Beers with the American Arbitration Association, seeking arbitration in South Carolina, and litigation was commenced by the parties in both states.

This appeal arises out of the action originally commenced in South Carolina state court by TechnoSteel seeking to compel arbitration of the dispute, which was subsequently removed by Beers to the federal district court in South Carolina. After removal, TechnoSteel filed a petition to compel arbitration with the district court pursuant to § 4 of the Arbitration Act. *See* 9 U.S.C.A. § 4. Beers filed a motion to dismiss the case, or alternatively, to transfer the action pursuant to 28 U.S.C.A. § 1404(a) to the United States District Court for the Northern District of Georgia, asserting that it was the forum agreed upon by the parties in their subcontract.

On May 5, 2000, the district court denied TechnoSteel's petition to compel arbitration based upon its interpretation of the parties' contractual agreement and granted Beers' motion to transfer the action to the Northern District of Georgia. On May 10, 2000, the transferred action was received and docketed in the Northern District of Georgia. TechnoSteel filed a notice of appeal from the district court's denial of its petition to compel arbitration under § 4 of the Arbitration Act on May 18, 2000.[1]

## II.

We begin with Beers' motion to dismiss TechnoSteel's appeal for lack of jurisdiction. As noted, the district court denied TechnoSteel's petition to compel arbitration of its construction dispute with Beers, filed under 9 U.S.C.A. § 4, and then transferred the balance of the action, specifically TechnoSteel's causes of action for breach of contract and quantum meruit, to Georgia where similar litigation was pending. TechnoSteel does not appeal the portion of the district court's order transferring the litigation to Georgia; such a decision is

---

[1]At oral argument, the parties represented that the United States District Court for the Northern District of Georgia has granted TechnoSteel's motion to stay the proceedings pending this court's decision on appeal.

interlocutory and not immediately appealable.[2] Rather, TechnoSteel seeks only to exercise its right under § 16 of the Arbitration Act to challenge the district court's denial of arbitration, which is an immediately appealable decision. *See* 9 U.S.C.A. § 16(a)(1)(B) (West 1999) ("An appeal may be taken from . . . . an order . . . denying a petition under section 4 of this title to order arbitration to proceed.").

In its motion to dismiss, however, Beers draws no distinction between the reviewability of interlocutory decisions which are immediately appealable and those which are not. Relying on precedent which holds that a transferor circuit court loses jurisdiction to review interlocutory decisions of its district courts that are *not* immediately appealable once the file is physically transferred under § 1404(a), *see, e.g.*, *Wilson-Cook Med., Inc. v. Wilson*, 942 F.2d 247, 250 (4th Cir. 1991); *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516-17 (10th Cir. 1991), Beers asserts that we are likewise divested of jurisdiction to review immediately appealable decisions of our district courts if the district court file is physically transferred to a district court embraced within another circuit before a notice of appeal is filed here. We find the proposed application of the general § 1404(a) transfer principles applicable to interlocutory decisions that are not immediately appealable to be unsuitable in the quite different context of timely filed appeals from immediately appealable decisions of our district courts. We therefore deny Beers' motion to dismiss.

### A.

Generally, courts of appeal have jurisdiction over appeals from all "final decisions" of the district courts under 28 U.S.C.A. § 1291 (West 1993), including: limited types of interlocutory decisions specified under 28 U.S.C.A. § 1292(a) (West 1993); decisions certified for immediate appeal by the district court and accepted by the circuit court under 28 U.S.C.A. § 1292(b) (West 1993); decisions which are

---

[2]Immediate challenges to a § 1404(a) transfer are limited to the filing of a petition for writ of mandamus with the transferor circuit court prior to the physical transfer of the file or, once the file is transferred, to the filing of a motion with the transferee district court to retransfer the case. *See Brock v. Entre Computer Ctrs., Inc.*, 933 F.2d 1253, 1257 (4th Cir. 1991); *In re Ralston Purina Co.*, 726 F.2d 1002, 1005 (4th Cir. 1984).

subject to immediate mandamus review under 28 U.S.C.A. § 1651 (West 1994); decisions, such as the one before us today, which are otherwise immediately reviewable by virtue of another congressional act; and decisions treated as final under the "collateral order" doctrine of *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546 (1949).

The directive of where such appeals must be taken is governed by 28 U.S.C.A. § 1294(1) (West 1993), which provides that:

> appeals from *reviewable decisions* of the district and territorial courts *shall be taken* to the courts of appeals as follows: (1) From a district court of the United States to the court of appeals for the circuit embracing the district. . . .

*Id.* (emphasis added). The statute seems clear enough. But, the issue of what constitutes a "reviewable decision" under § 1294(1) is less clear when viewed in the context of deciding whether a circuit court has jurisdiction to review a decision of a district court that was issued prior to or simultaneously with an order transferring a case or some portion of it to another circuit under § 1404(a). Several views have emerged.

First, at least two circuits have held that "reviewable decisions" under § 1294(1) "applies to *all* 'reviewable' decisions of the district courts, not just to those which are immediately appealable." *McGeorge v. Continental Airlines, Inc.*, 871 F.2d 952, 954 (10th Cir. 1989) (emphasis added); *see Roofing & Sheet Metal Servs., Inc. v. La Quinta Motor Inns, Inc.*, 689 F.2d 982, 986 n.5 (11th Cir. 1982). Under this view, a transferee circuit court has no jurisdiction to review any decision, immediately appealable or not, issued by a transferor district court. Although aware of the "jurisdictional hiatus" caused by its interpretation of § 1294(1) — the nonappealable, interlocutory decision traveled with the case when transferred, rendering it unreviewable in the transferor circuit court as well — the Tenth Circuit held that "the unequivocal language of [§ 1294(1)] leaves no room for doubt that we do not have jurisdiction over" an appeal from the transferor district court's decision. *McGeorge*, 871 F.2d at 954; *see also Roofing & Sheet Metal Servs.*, 689 F.2d at 986 (noting that "Congress has not given us jurisdiction to review decisions of district

courts outside this Circuit.").[3] However, these cases do not speak to the issue of whether the appellate court in the transferor circuit *retains* jurisdiction over an immediately appealable decision of its district court following a § 1404(a) transfer, at least during the time period allowed for the filing of such an appeal.

The Second Circuit, in contrast, held early on that "[t]he review of any order of the district court in a transferred cause, made before transfer, *is* within the jurisdiction of the court of appeals of the circuit to which the cause has been transferred." *Magnetic Eng'g & Mfg. Co. v. Dings Mfg. Co.*, 178 F.2d 866, 870 (2d Cir. 1950) (emphasis added) (refusing to review a § 1404(a) transfer by its district court to another circuit, and noting that the transferee circuit court would have jurisdiction to decide whether the transfer was erroneous and the power to direct its district court to retransfer the action to the transferor district).[4] However, the court only recently addressed the jurisdictional limitations imposed by § 1294(1) on its view. *See Songbyrd, Inc. v. Estate of Grossman*, 206 F.3d 172 (2d Cir. 2000). Noting that under § 1294(1) "a court of appeals normally has no jurisdiction to review the decision of a district court in another circuit, but may review a ruling by the transferee court denying retransfer," the court followed the lead of other circuits and held "that in order to preserve the opportunity for review of a transfer order in the transferee [c]ircuit, a party

---

[3]Thus, in *McGeorge*, the Tenth Circuit refused to review an interlocutory decision issued by a district court in another circuit prior to the district court's transferring the balance of the action to a district court within the Tenth Circuit. *See* 871 F.2d at 954. And, in *Roofing & Sheet Metal Services*, the Eleventh Circuit refused to review an interlocutory § 1404(a) transfer order of a district court located within another circuit. *See* 689 F.2d at 986. While not addressing § 1294(1) specifically, we have also refused to review a § 1404(a) transfer order entered by a district court in another circuit. *See, e.g.*, *Brock*, 933 F.2d at 1257; *Preston Corp. v. Raese*, 335 F.2d 827, 828 (4th Cir. 1964).

[4]*See also* 15A Charles A. Wright et al., *Federal Practice and Procedure* § 3914.12 (3d ed. 1992) (noting the Tenth and Eleventh Circuit view that the transferee circuit court cannot review decision of a transferor court in another circuit, but opining that "it would be better to recognize that the rules assigning district courts to geographical circuits were not drafted for the purposes of denying review" of orders issued by a transferring court in another circuit).

must move for retransfer in the transferee district court." *Id.* at 177 (citing *Roofing & Sheet Metal Servs.*, 689 F.2d at 986). And, like the Tenth and Eleventh Circuits, the Second Circuit only addressed the reviewability issue in the context of determining whether a circuit court has jurisdiction over interlocutory decisions which are not immediately appealable. *See Songbyrd*, 206 F.3d at 176-78; *Magnetic*, 178 F.2d at 870; *Chapple v. Levinsky*, 961 F.2d 372, 374 (2d Cir. 1992).

The D.C. Circuit, on the other hand, has considered the question of when a transferor circuit court retains jurisdiction over decisions that are immediately appealable. *See Hill v. Henderson*, 195 F.3d 671 (D.C. Cir. 1999). In addressing the claim that it should view an interlocutory decision of its district court as one immediately appealable and, therefore reviewable in the D.C. Circuit notwithstanding a transfer, the court followed the Second Circuit's view that the reviewability of interlocutory decisions which are not immediately appealable flows to the transferee circuit court of appeals. *See id.* at 674-75. However, the D.C. Circuit declined to interpret § 1294(1) as broadly as the Tenth Circuit had in *McGeorge*, holding that "reviewable decisions" in § 1294(1) refers not to "every *ruling* of a district court that might in due course ultimately pass under the scrutiny of an appellate court," *id.* at 675, but only to those that are immediately appealable in the circuit encompassing the district court that issued the decision:

> We think Congress's distinction between "final decisions" in § 1291 and "reviewable decisions" in § 1294 is consistent with our view that the appealability of the claim dismissal here flows to the transferee circuit. The Tenth Circuit seemingly understood "reviewable decisions" to encompass every *ruling* of a district court that might in due course ultimately pass under the scrutiny of an appellate court. But the term is susceptible to a narrower reading: *decisions subject to review at the time they are entered*, namely, (a) final decisions, (b) non-final decisions embraced by § 1292's provision for review of certain types of interlocutory orders, (c) decisions treated as final under the "collateral order" doctrine of *Cohen v. Beneficial Loan Corp.*, 337 U.S. 541 (1949), and (d) (perhaps) non-final decisions subject to immediate mandamus.

*Id.* at 675 (second emphasis added).[5] Thus, under the D.C. Circuit's view, "reviewable decisions" under § 1294(1), which are limited to those issued by the transferor district court that are "subject to review at the time they are entered," may only be appealed to the circuit court embracing the transferor district court, *id.* at 675, whereas all other pretransfer, interlocutory decisions "shift" or "flow" to the transferee circuit where they become appealable upon final judgment there, *see id.* at 675-77.

### B.

Applying these precedents to the case before us, we note that the decision of our district court denying TechnoSteel's petition to compel arbitration was immediately appealable, *see* 9 U.S.C.A. § 16(a)(1)(B), and that it was immediately appealable only to us, *see* 28 U.S.C.A. § 1294(1). The Eleventh Circuit Court of Appeals would not entertain an appeal from the South Carolina district court's denial of TechnoSteel's petition to compel arbitration. *See* 28 U.S.C.A. § 1294(1); *Roofing & Sheet Metal Servs.*, 689 F.2d at 986 & n.5. And, because the decision was immediately appealable, the time for appeal began to run in our circuit upon issuance of the decision. *See* Fed. R. App. P. 4(a)(1)(A).

Indeed, this does not appear to be in dispute. Rather, Beers asserts that, because § 1404(a) transfers are normally considered to be "plenary," *see Chrysler*, 928 F.2d at 1518, and a transfer of jurisdiction is normally considered to be complete when the file is received by the transferee district court, *see Wilson-Cook*, 942 F.2d at 250, we are divested of jurisdiction to review both pretransfer, interlocutory decisions issued by our district courts *and* immediately appealable decisions issued by our district court. To preserve jurisdiction over the immediately appealable pretransfer decision, the argument goes, the district court was required to formally sever the arbitration aspects of the case from the balance of the case under Federal Rule of Civil Pro-

---

[5]The D.C. Circuit ultimately refused to exercise jurisdiction over its district court's interlocutory dismissal of one count of a plaintiff's complaint after the case had been transferred to a district court outside the circuit because it was not immediately appealable. *See Hill*, 195 F.3d at 674.

cedure 21 prior to the transfer, or TechnoSteel was required, notwithstanding the normal time allowed for an appeal under our rules, to file an appeal in our circuit before the district court file was physically transferred to the transferee district.

We disagree. While it is true that courts have adhered to the general rule that a § 1404(a) transfer "contemplates a plenary transfer of the entire case," *Chrysler*, 928 F.2d at 1518 (internal quotation marks omitted), and that a transferor court loses jurisdiction over a case once the file is physically transferred to the transferee district, *see id.* at 1516-17, the courts have done so in the context of interlocutory decisions that are not immediately appealable when entered. In contrast, and under any view of the jurisdictional limitations imposed by § 1294(1) and its interplay with a § 1404(a) transfer, precedent simply does not dictate the holding that we lose jurisdiction to review immediately appealable, and timely appealed, decisions of our district court denying a petition to compel arbitration simply because the district court simultaneously chose to transfer the balance of the case for litigation elsewhere.

1.

As an initial premise, we note that courts have not blindly applied the rules governing the transfer of jurisdiction to strip circuit courts of jurisdiction to review every decision issued by their district courts prior to transfer, nor have courts advanced the view proffered by Beers that a formal Rule 21 severance order is the only method by which jurisdiction over a particular decision can remain in the transferor circuit. Indeed, in the *Chrysler* case relied upon by Beers, the Tenth Circuit recognized that the reviewability of judgments entered under Rule 54(b) would remain in a transferor circuit court notwithstanding a § 1404(a) transfer. *Id.* at 1517 n.7 (noting that "where the transferor court has entered partial judgment under Rule 54(b) prior to transfer, the court of appeals in the transferor circuit has jurisdiction to review the question, irrespective of whether other issues in the case have been transferred out-of-circuit"); *see also McGeorge*, 871 F.2d at 954 (noting that "[t]he jurisdictional hiatus" created by its interpretation of § 1294(1) "could have been avoided had the [transferor district court] entered a Rule 54(b) partial judgment on the claims it dismissed," vesting jurisdiction to review the claims in the

transferor circuit court). And, while noting that a district court may sever claims under Rule 21, thereby creating two separate actions, and "transfer one action while retaining jurisdiction over the other," *Chrysler*, 928 F.2d at 1519, the court did not opine that a formal Rule 21 severance order is outcome-determinative of the question of whether the transferor circuit court retains jurisdiction over a decision issued by its district court.

Additionally, other circuits have specifically declined to impose the formal entry of judgment under Rule 54(b) or a Rule 21 severance order as a condition precedent to holding that reviewability of a particular decision remains in the transferor circuit. For example, the Third Circuit has noted that a transferor district court can effectively sever claims, even though it neglects to explicitly invoke Rule 21, and thereby preserve an appeal from such orders in its own circuit notwithstanding the completion of the physical transfer, so long as there is "a strong indication that the judge intended to effect a severance." *White v. ABCO Eng'g Corp.*, 199 F.3d 140, 145 n.6 (3d Cir. 1999). Like the Tenth Circuit, the court acknowledged the general premise that "[a] transfer is typically deemed to be complete when the files of a case are lodged in the transferee court," but declined to apply it blindly because "shifting papers cannot validate an otherwise invalid transfer, or extend the scope of a limited transfer." *Id.* at 143 n.4.

The D.C. Circuit has held that a district court's dismissal of plaintiffs' claims against a defendant based upon a lack of personal jurisdiction was a "final" decision ripe for immediate appellate review by the transferor circuit court, even though the district court had *not* formally directed entry of final judgment under Rule 54(b) and had transferred the remainder of the case to the district court in Maryland. *See Reuber v. United States*, 773 F.2d 1367, 1368 (D.C. Cir. 1985). We held in a similar context that the physical transfer of a case to a transferee court did not deprive us of appellate jurisdiction over an interlocutory, but immediately appealable, *Cohen* order. *See Gower v. Lehman*, 799 F.2d 925, 927 (4th Cir. 1986). And, of course, in *Hill*, 195 F.3d at 675, the D.C. Circuit specifically addressed the issue of immediately appealable decisions of a transferor court, noting that a transferor circuit court *does* retain jurisdiction over such immediately appealable decisions issued by its district courts, even though other

non-appealable, interlocutory decisions issued by the transferor district court "flow" to the transferee circuit.[6]

## 2.

The present situation is all the more clear from a jurisdictional standpoint. Under Rule 54(b), a district court order dismissing one of several claims or parties is *not* typically viewed as a "final decision" qualifying for immediate appeal unless the district court determines that "there is no just reason for delay" and enters final judgment as to the claim, thereby creating an immediately appealable or final decision. Fed. R. Civ. P. 54(b). Consequently, when the transferor district court enters partial judgment under Rule 54(b), the entry of judgment creates an immediately appealable decision which easily falls outside the normal "plenary transfer" principle of § 1404(a). *See Chrysler*, 928 F.2d at 1517 n.7; *McGeorge*, 871 F.2d at 954. If partial judgment is not entered under Rule 54(b), the interlocutory decision of the district court remains unappealable, "subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." Fed. R. Civ. P. 54(b). Thus, the "entry of judgment adjudicating all the claims and the rights and liabilities" of the parties will likely occur in the transferee district court, Fed. R. Civ. P. 54(b), where the party can secure at least some form of review of the transferor district court's interlocutory rulings by moving the transferee district court either to retransfer the case or reconsider the pretransfer decision and, therefrom, seek review by its

---

[6]Like our circuit, the D.C. Circuit had previously refused to review transfer orders entered by a district court from another jurisdiction. *See In re Briscoe*, 976 F.2d 1425, 1426 (D.C. Cir. 1992); *Starnes v. McGuire*, 512 F.2d 918, 924 (D.C. Cir. 1974) (en banc). However, the *Hill* court felt unconstrained by these holdings because "transfer orders themselves have engendered a complex and somewhat conflicting pattern of reviewability," *Hill*, 195 F.3d at 677, and because "such orders are usually effectively subject to immediate review via mandamus in the circuit of the transferring court" or to "at least partial review . . . in the transferee circuit by filing a motion for retransfer, the denial of which is clearly reviewable by the court of appeals of the transferee district," *id.*

circuit court of appeals, *see, e.g.*, *Brock v. Entre Computer Ctrs., Inc.*, 933 F.2d 1253, 1257 (4th Cir. 1991); *Chrysler*, 928 F.2d at 1518.[7]

In contrast, a "judgment" under Rule 54(a) of the Federal Rules of Civil Procedure is defined as "any order from which an appeal lies." Fed. R. Civ. P. 54(a). It embraces "any 'final decision' from which an appeal is permitted under [§] 1291," as well as "any appealable interlocutory order." 10 Charles A. Wright et al., *Federal Practice and Procedure* § 2651 (3d ed. 1998); *NBA v. Minnesota Prof'l Basketball, Ltd. P'ship*, 56 F.3d 866, 872 (8th Cir. 1995). Thus, it differs from Rule 54(b), which "generally does not apply to orders that are not final under [§] 1291 . . . but nevertheless are appealable, either as a result of some other statutory provision [such as § 1292 or § 1651] or as a judicially created exception to the final-judgment rule," such as the collateral order doctrine of *Cohen*. 10 Charles A. Wright et al., *Federal Practice and Procedure* § 2658 (3d ed. 1998).

Because we are presented with a decision which is immediately appealable solely by operation of § 16(a)(1)(B) of the Arbitration Act, in contrast to partial judgments entered under Rule 54(b), the decision is appealable without need for any action by the parties or the court.

---

[7]Thus, unlike here, a party opposing an interlocutory decision which is not immediately appealable is not stripped of its right to appellate review by virtue of a § 1404(a) transfer. For transfer orders, the party may petition the transferor circuit court for a writ of mandamus or, once transferred, move the transferee court to retransfer the case and secure appellate review of its decision in the transferee circuit. *See Brock*, 933 F.2d at 1257 (holding that a party opposing a transfer from another jurisdiction to ours may move for retransfer of the action in our district court, which will then vest jurisdiction in us to review the matter). In the case of other interlocutory orders, the party is not precluded from arguing, and the transferee circuit court is not precluded from reviewing on appeal from the final judgment, the question of whether the transferor district court's interlocutory decision was a correct application of the law of the case in the transferred action. *See, e.g.*, *Chrysler*, 928 F.2d at 1518 (noting that while direct review of an interlocutory decision issued by a district court outside of its jurisdiction is not available, "[r]eview of the transferee court's application of law of the case provides a limited avenue through which the transferee appellate court may address the merits of the underlying issue").

In other words, when a transferor district court decision adjudicates fewer than all the claims or adjudicates the rights and liabilities of fewer than all the parties, but nonetheless creates a decision from which an immediate appeal lies by virtue of a separate statute (such as § 16 of the Arbitration Act), it has no less created an immediately appealable decision; but, it need not act to enter judgment under Rule 54(b) at all prior to transferring the file in order to preserve its reviewability in the transferor circuit court. Of course, such a decision equally falls outside the normal "plenary transfer" principle of § 1404 because, as in the case of a partial adjudication entered as final under Rule 54(b), the district court has issued a decision which is effectively severed from the balance of the case and immediately appealable in the transferor circuit court. And, because the reviewability of the immediately appealable decision does not transfer with the physical file, at least not until the time for appeal expires under our rules, the timing of the physical transfer of the file to another district has no effect upon our jurisdiction to entertain the appeal.

3.

Finally, the practicalities of the situation also compel us to reject Beers' attempt to extend the general rules concerning jurisdiction over pretransfer decisions which are not immediately appealable to decisions which are immediately appealable.

The transfer statute provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C.A. § 1404(a). Thus, "[a] section 1404(a) transfer merely involves a discretionary change to another district where the action could have been brought." *Gower*, 799 F.2d at 927. It contemplates that the transfer of a case from one district court to another district court for the conveniences of the parties and witnesses — the only difference being locale — without substantially affecting the rights of the parties. *See e.g.*, *Magnetic*, 178 F.2d at 868 (noting that "when an action is transferred, it remains what it was; all further proceedings in it are merely referred to another tribunal, leaving untouched whatever has been already done"); *Chrysler*, 928 F.2d at 1516.

The general rule that the transfer of jurisdiction is plenary and occurs when the record is physically transferred to the transferee court is, therefore, premised upon the commonsense and workable principle that "some court should have jurisdiction over a case at all times." *Wilson-Cook*, 942 F.2d at 250. Such a bright line is necessary to mark the transfer of jurisdiction, and the docketing of a transferred case in the transferee circuit is the one most courts have adopted. *See, e.g.*, *Chrysler*, 928 F.2d at 1516-17; *In re Sosa*, 712 F.2d 1479, 1480 (D.C. Cir. 1983) (per curiam). While apt when applied to an interlocutory ruling handed down by a transferor district court that is not immediately appealable to any court, extension of this principle to immediately appealable decisions of a transferor district court renders the rule unworkable and unfair.

An interlocutory decision issued by a transferor district court that is not immediately appealable does not start any appeal clock running, nor does the subsequent transfer leave the aggrieved party with no remedy, as the party may act to preserve the ruling and the right to appeal from it upon final judgment in the transferee circuit court. Thus, the view that nonappealable, interlocutory decisions necessarily travel with the case when transferred, with jurisdiction transferring when the file is received by the transferee court, is an appropriate one.

In contrast, an interlocutory decision issued by a transferor district court which *is* immediately appealable *does* start the appeal clock running and starts it running in the transferor circuit court. Thus, hardly a reflection of the commonsense and workable rule that has been applied in the context of nonappealable, interlocutory decisions, extension of the principle to an immediately appealable decision of a transferor court operates only to deprive the transferor circuit court of jurisdiction over an appeal as of right from an immediately appealable decision issued by its district court even though the transferee circuit court has, under § 1294(1), no jurisdiction to review the decision either.

Under Beers' argument, in order to obtain direct appellate review of the denial of a petition to compel arbitration or other immediately appealable decision entered by a district court in our circuit prior to or concurrent with a § 1404 transfer, the aggrieved party would have to race to file an appeal in our court before the clerk of the district

court could send the file to the transferee district court, eliminating any time for reflection by the losing party, as our thirty-day time period for filing an appeal in civil cases will be rendered meaningless. *See* Fed. R. App. P. 4(a)(1)(A). Or, if he loses the footrace, the party would be relegated to seeking retransfer from the transferee district court in order to pursue the appeal, hopeful that he can file the motion, get the requested relief, and get the file physically re-transferred before the thirty-day time for appeal runs in the transferor circuit court. Neither the intent of § 1294(1), nor the general rules previously espoused by the courts regarding § 1404(a) transfers, dictates such a frantic appellate procedure.[8]

In sum, we find no impediment to our exercising jurisdiction over TechnoSteel's timely filed appeal from the district court's decision. The district court's decision denying the petition to compel arbitration, which is immediately appealable under 9 U.S.C.A. § 16, is subject to review in our circuit notwithstanding the concurrent § 1404(a) transfer of the balance of the action, rendering the fact that the transfer was complete before the appeal was actually filed irrelevant.

### III.

Having determined that we have jurisdiction to entertain Techno-Steel's appeal from the district court's denial of its petition to compel arbitration under § 4 of the Arbitration Act, we turn to the merits of TechnoSteel's appeal. Section 4 provides that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in the agreement." 9 U.S.C.A. § 4. Techno-Steel contends that its subcontract agreement with Beers mandated arbitration of the construction dispute between them. Beers disagrees.

---

[8]Obviously, the better practice would be for the district court to stay any transfer for the thirty-day appeal period and, if an appeal is filed, during the time the appeal from the denial of arbitration is pending in our court. According to representations made during oral argument, the same outcome was achieved in this case by obtaining a stay of the litigation in the transferee forum. However, a stay entered by our district court would be the better and easier course.

The Federal Arbitration Act, 9 U.S.C.A. §§ 1-16 (West 1999) "does not mandate the arbitration of all claims, but merely the enforcement . . . of privately negotiated arbitration agreements." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219 (1985); *see Volt Info. Sci., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 474-75 (1989). Although federal policy favors arbitration and any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, *see Dean Witter*, 470 U.S. at 221, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit," *Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co.*, 867 F.2d 809, 812 (4th Cir. 1989) (internal quotation marks omitted). The Federal Arbitration Act "simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." *Volt Info. Sci.*, 489 U.S. at 478. We review the district court's interpretation and construction of the Subcontract between TechnoSteel and Beers *de novo. See American Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 91 (4th Cir. 1996); *Nehi Bottling Co. v. All-American Bottling Corp.*, 8 F.3d 157, 162 (4th Cir. 1993).

Article 2 of the Subcontract Agreement between Beers and TechnoSteel incorporates "the Agreement between the Owner [the Hospital] and Contractor . . ., [and] all Conditions to the Agreement between the Owner and Contractor" as part of its Subcontract Agreement. J.A. 30. Article 4.5.1 of the General Conditions of the Agreement between the Owner and Beers, in turn, provides that "[a]ny controversy or Claim arising out of or related to the Contract, or the breach thereof, shall be settled by arbitration." J.A. 108. However, Article 5.3.1 of the General Conditions of the Agreement between the Owner and Beers also mandates that Beers "require each [of its] Subcontractor[s] . . . to assume toward the Contractor all the obligations and responsibilities which the Contractor . . . assumes toward the Owner" and, further, that:

> [e]ach subcontract agreement . . . shall allow to the Subcontractor, *unless specifically provided otherwise in the subcontract agreement*, the benefit of all rights, remedies and redress against the Contractor that the contractor, by the Contract Documents, has against the Owner.

J.A. 110 (emphasis added). TechnoSteel contends that the dispute between it and Beers is required to be arbitrated pursuant to the incorporation of the arbitration terms of the Owner/Beers Contract into the Beers/TechnoSteel Subcontract Agreement. We disagree.

In the absence of any contrary provision contained within the Subcontract Agreement, the Subcontract Agreement would indeed have required, by virtue of its incorporation of the Owner/Beers Contract, that all controversies or claims between Beers and TechnoSteel be submitted for arbitration. However, while Article 4.5.1 of the General Conditions would, if read in isolation, impose an arbitration requirement upon the Subcontract Agreement, Article 5.3.1 of the General Conditions must be read as providing a Subcontractor with the right to demand arbitration "*unless specifically provided otherwise in the subcontract agreement.*" J.A. at 110 (emphasis added). TechnoSteel's argument fails because the Subcontract Agreement between it and Beers provides otherwise.

Article 14 of the Subcontract Agreement governs claims and disputes which arise under the Agreement. Article 14.d provides that "[a]ny claim, dispute or other matter in question between the Contractor and the Subcontractor relating to this Agreement, or the Work performed hereunder, shall be governed by the laws of the State of Georgia." J.A. 39. And, Article 14.h. of the Subcontract Agreement quite clearly provides that:

> *To the extent Contractor does not elect to arbitrate a claim or dispute hereunder, Contractor and Subcontractor each hereby agree that the claim or dispute shall be submitted for resolution to the United States District Court for the Northern District of Georgia or, if that court does not have subject matter jurisdiction, to the Superior Court of Fulton County, Georgia. Both parties hereby consent to and waive any objections to the jurisdiction and venue of these courts, and stipulate that they shall be the sole fora for litigating disputes hereunder.*

J.A. 40 (emphasis added). Thus, under the plain language of the Subcontract Agreement, the parties "otherwise" provided that disputes

which arise under the Subcontract Agreement must be submitted to litigation in Georgia unless Beers elects arbitration.

Despite this contractual provision, however, TechnoSteel asserts that we should ignore the language of Article 14.h requiring the litigation of such disputes because, during negotiations, the parties agreed to delete a portion of Beers' standard Subcontract Agreement, specifically Article 14.e. *See* J.A. 26. Article 14.e, had it been included in the final Subcontract Agreement, would have provided that:

> All disputes or claims between Contractor and Subcontractor arising out of this Agreement, or the performance of any work hereunder, shall be decided by litigation unless the Contractor, at its sole opinion, advises the Subcontractor within 30 days of the dispute or claim arising that Contractor elects to have the dispute or claim decided or resolved by way of arbitration. In such event, the Contractor shall provide the Subcontractor written notice of its election, the Subcontractor shall be bound by the election, and the arbitration proceeding shall be conducted pursuant to the Construction Industry Arbitration Rules as issued by the American Arbitration Association then in effect. All such arbitration proceedings shall be held in Atlanta, Georgia, and judgment upon the arbitration award may be entered by any court having jurisdiction.

J.A. 39. By agreeing to delete this provision, TechnoSteel asserts, the parties intended to remove litigation as an accepted method of dispute resolution altogether and, instead, to have the arbitration provision of Article 4.5.1 of the General Conditions of the Owner/Beers Contract control the resolution of all disputes by virtue of its incorporation into the Subcontract Agreement. TechnoSteel further asserts that we should also ignore the seemingly unilateral right of Beers to demand arbitration, which quite clearly remained by virtue of the first clause of Article 14.h, because it was also contrary to the intent of the parties evidenced by the deletion of Article 14.e to preserve the mutual right to demand arbitration which would be afforded by the General Conditions.

We find TechnoSteel's argument to be strained at best. While TechnoSteel argues that the parties intended to eliminate Beers' ability to unilaterally request arbitration by virtue of its deletion of Article 14.e and to eliminate resort to litigation as a means of dispute resolution altogether, it offers no satisfactory explanation as to why the parties simultaneously neglected to seek any modifications to the clause requiring litigation found in Article 14.h. Beers, on the other hand, persuasively argues that the removal of Article 14.e from the Subcontract Agreement was consistent not only with the intent to eliminate Beers' right to unilaterally demand arbitration, but arbitration altogether, thereby leaving litigation in Georgia as the sole method by which disputes arising out of the Subcontract Agreement would be resolved.[9]

In any event, under the plain language of the dispute resolution portion of the Subcontract Agreement, the parties agreed that "[t]o the extent Contractor does not elect to arbitrate a claim or dispute" under the agreement, all claims or disputes "shall be submitted for resolution to the United States District Court for the Northern District of Georgia or, if that court does not have subject matter jurisdiction, to the Superior Court of Fulton County, Georgia" and agreed that these courts "shall be the sole fora for litigating disputes hereunder." J.A. 40. Accordingly, we agree with the district court's conclusion that TechnoSteel failed to establish that an agreement to arbitrate claims and disputes under the Subcontract Agreement exists between Beers and TechnoSteel. We therefore affirm the district court's order denying TechnoSteel's petition to compel arbitration under § 4 of the Arbitration Act.

## IV.

For the foregoing reasons, we deny Beers' motion to dismiss

---

[9]Under either argument, the reference to Beers' "elect[ion] to arbitrate a claim or dispute hereunder" in the first phrase of Article 14.h only calls into question whether Beers had the remaining right to demand arbitration unilaterally, not whether TechnoSteel ever had a right to do so. Because Beers did not attempt to unilaterally demand arbitration, we need not decide whether the parties' decision to delete Article 14.e indicates a mistaken failure to also delete the first phrase of Article 14.h.

TechnoSteel's appeal for lack of jurisdiction and affirm the district court's decision denying TechnoSteel's motion to compel arbitration.

*AFFIRMED*