# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT
_____

**No. 22-5094**                    **September Term, 2021**

**1:22-cv-00760-JEB**

**Filed On:** April 15, 2022

Patrick J. Mahoney, Reverend,

      Appellant

    v.

United States Capitol Police Board, in its
Official Capacity, et al.,

      Appellees


**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

**BEFORE:**    Tatel, Millett*, and Pillard, Circuit Judges

## J U D G M E N T

This appeal was considered on the record from the United States District Court for the District of Columbia and on the briefs filed by the parties. See Fed. R. App. P. 34(a)(2); D.C. Cir. Rule 34(j). It is

**ORDERED AND ADJUDGED** that the district court's order filed April 5, 2022, denying appellant's motion for a preliminary injunction, be affirmed. Appellant has not demonstrated that the district court abused its discretion in denying the relief sought. See In re Navy Chaplaincy, 697 F.3d 1171, 1178 (D.C. Cir. 2012) (district court's denial of preliminary injunction reviewed for abuse of discretion).

In particular, appellant has not demonstrated that he will suffer irreparable harm absent preliminary injunctive relief. See Wisconsin Gas Co. v. FERC, 758 F.2d 669, 674 (D.C. Cir. 1985) (per curiam) (noting, in the context of injunctive relief pending appeal, that irreparable harm must be "both certain and great; it must be actual and not


* A statement by Circuit Judge Millett, concurring in this judgment, is attached.

theoretical."). The U.S. Capitol Police Board's refusal to issue a permit does not restrain the time, manner, or location of appellant's speech. Appellant does not dispute that he is allowed to hold a prayer vigil in his desired location; the only constraint is on the number of persons who may attend that vigil. Appellant has failed to assert any First Amendment claim to have his anticipated number of attendees present. He makes no claim that he intends to involve 25 people as participants in his vigil, and indeed, he has provided little support for his expectation that the vigil will attract a crowd larger than the 19-person limit. Nor does he purport to sue on behalf of a prospective attendee's right to be present at the vigil.

"In each case, courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008) (internal quotation and citation omitted). Appellant has made little showing that the challenged cap on attendance will cause any actual or concrete harm to the exercise of his asserted rights. On the other hand, the Government's security concern in limiting in advance the number of persons involved in demonstration activity in close proximity to the Capitol, and not being subject to last minute requirements or adjustments, is a weighty one.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or petition for rehearing en banc. See Fed. R. App. P. 41(b); D.C. Cir. Rule 41.

**Per Curiam**

**FOR THE COURT:**
Mark J. Langer, Clerk

BY:     /s/
Daniel J. Reidy
Deputy Clerk

Millett, Circuit Judge, concurring in the judgment:

I join in full the judgment denying the preliminary injunction sought by Rev. Patrick J. Mahoney in this as applied challenge.  I write separately to underscore that there appears to be much force to the merits of his First Amendment argument.

Mahoney alleges that as a result of the violent attacks on the United States Capitol on January 6, 2021, the United States Capitol Police Board prohibits demonstrations of twenty or more persons on the West Front Lawn of the Capitol. Declaration of Patrick J. Mahoney, Joint Appendix ("J.A.") 29; *see also* Capitol Police Board Order 21.15 (Sept. 2, 2021).  Mahoney's permit application to hold a Good Friday prayer vigil was denied by the Board on that basis.

Our starting point is that a preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).  As the plaintiff, Mahoney bears the burden of persuasion in seeking a preliminary injunction.  *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).  To be entitled to that exceptional form of relief, Mahoney must establish that:  (1) "he is likely to succeed on the merits"; (2) "he is likely to suffer irreparable harm in the absence of preliminary relief"; (3) "the balance of equities tips in his favor"; and (4) "an injunction is in the public interest."  *Winter*, 555 U.S. at 20.

As to the first factor, on the limited record before us, I am persuaded by Mahoney's argument that the government's conduct violates the First Amendment's content-neutrality requirement.  The Board does not dispute that, even after January 6th, the portion of the Capitol Grounds where Mahoney seeks to hold a vigil is a public forum.  *See Lederman v. United States*, 291 F.3d 36, 41 (D.C. Cir. 2002) ("[C]ourts have long recognized that the Capitol Grounds as a whole meet the definition of a traditional public forum[.]").  Yet the Board's interpretation of its own regulations is that, even after January 6th, they make exceptions from "the rules regarding demonstrations on Capitol Grounds," including specifically the prohibition on demonstrations of twenty or more persons in the areas at issue here.  That exception includes speech events conducted and organized by Members of Congress.  The Board argues, and the district court reasoned, that Members of Congress are different in their entitlement to use the Capitol Grounds because it is their workplace.  Perhaps that is so—we need not decide that question today.

The problem is that the Board applies preferential speech treatment not just to demonstrations organized and conducted by Members of Congress themselves, but also to any speech events "sponsored" or "advocated" for by a Member of Congress. Declaration of Scott Grossi, J.A. 84.

That policy of selectively allowing speech just because a governmental actor approves it is not remotely content neutral. Rather, this exception appears (on the thin record before us) to provide that certain First Amendment events can go forward in a public forum only if they are "sponsored" or "strongly advocated" for by a governmental actor—a Member of Congress and his or her staffers. J.A. 84. And to be clear, on this record, that exception does not appear to require that the Member of Congress individually organize the event, speak at the event, or even be present. According to the Grossi declaration, an American Conservative Union rally in July 2021 was ultimately sponsored by the Union itself, not by a Member of Congress. The declaration says only that a Member "original[ly]" requested it, but was not the ultimate sponsor. J.A. 83. Nevertheless, that preferred speaker was able to obtain a permit because Members of Congress and staffers pressed for it—presumably because they approved of the Union's message.

Making the right to speak in a public forum wholly dependent on the approval and sponsorship—or perhaps just the behind-the-scenes lobbying—of a governmental official flies in the teeth of the First Amendment. The First Amendment does not tolerate a procedure by which government officials may indicate a "preference for the substance of what the favored speakers have to say[.]" *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 658 (1994); *see also Reed v. Town of Gilbert*, 576 U.S. 155, 170 (2015) ("Because '[s]peech restrictions based on the identity of the speaker are all too often simply a means to control content,' [the Supreme Court has] insisted that 'laws favoring some speakers over others demand strict scrutiny when the [government's] speaker preference reflects a content preference[.]'") (citations omitted); *First Nat'l Bank of Boston v. Bellotti,* 435 U.S. 765, 784–785 (1978) ("In the realm of protected speech, the legislature is constitutionally disqualified from dictating the subjects about which persons may speak and the speakers who may address a public issue.").

Said another way, it is "clearly unconstitutional" for a law "to enable a public official to determine which expressions of view will be permitted and which will not[.]"

*Cox v. Louisiana*, 379 U.S. 536, 557 (1965).  A law, for example, cannot "provide[] that there [can] only be peaceful parades or demonstrations in the unbridled discretion of the local officials."  *Id.*  "A long line of cases in th[e] [Supreme] Court makes it clear that [the government] cannot 'require all who wish to disseminate ideas to present them first to police authorities for their consideration and approval, with a discretion in the police to say some ideas may, while others may not, be disseminated.'"  *Id.* (formatting modified and citation omitted).

Yet here, Mahoney's permit sought approval for a vigil with 24 other people at a prominent location on the national stage, a place that may be more likely to attract consideration of his message and convey its worthiness.  But he was denied that permit because no Member of Congress has expressed approval of his vigil by advocating for it or sponsoring it.  It is irrelevant that Mahoney did not seek approval or sponsorship because it is the requirement of obtaining approval of speech from a governmental actor without any constraining and objective standards that is constitutionally suspect.

Because the Board's permitting scheme is not content neutral, the burden falls on the Government to show that the restriction "furthers a compelling interest and is narrowly tailored to achieve that interest."  *Reed*, 576 U.S. at 171 (citation omitted).  Although the Government assuredly has a compelling interest in the security of the Capitol Building, it has done little to show that limiting permits to those speakers whose message has been given a thumbs up by a government official is narrowly tailored to its security rationale.

Relatedly, the district court misstepped in treating Mahoney's First Amendment claim as controlled by the district court's earlier opinion in Mahoney's September 11 prayer vigil case.  *See Mahoney v. United States Capitol Police Board*, No. 22-760, 2022 WL 1014791, at *3 (D.D.C. April 5, 2022).  In the September 11 case, Mahoney conceded that the Board's policy was content neutral.  *See Mahoney v. United States Capitol Police Board*, No. 21-2314, 2022 WL 523009, at *4 (D.D.C. Feb. 22, 2022) ("[D]espite vigorously challenging the next two prongs of the intermediate-scrutiny analysis, Mahoney tacitly admits that the regulations are content neutral by remaining silent on the issue.").  But in the case before us, Mahoney clearly challenges the policy's content neutrality, and does so with record evidence that the government does not contest.

It is worth emphasizing that "an appellate court in a later phase of the litigation with a fully developed record, full briefing and argument, and fully developed consideration of the issue should not bind itself to the time-pressured decision it made earlier on a less adequate record[.]" *Wye Oak Tech., Inc. v. Republic of Iraq*, 24 F.4th 686, 698 (D.C. Cir. 2022) (formatting modified) (quoting *Sherley v. Sebelius*, 689 F.3d 776, 782 (D.C. Cir. 2012)).  The outcome in this case may well change depending on how the record develops on remand and how the contours of this sponsorship exception are fleshed out.